## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

—————————————————————
                              :

OLIVER J. HIGGINS,               :
                              :
              Plaintiff,      :
                              :
        v.               :      Civil Action No. 10-1485 (RLW)
                              :
UNITED STATES DEPARTMENT  :
OF JUSTICE, *et al.*,           :
                              :
             Defendants.    :
—————————————————————:

## <u>MEMORANDUM OPINION</u>

Plaintiff brings this action against the United States Departments of Justice ("DOJ") and Homeland Security ("DHS"), and various components of these two agencies, under the Freedom of Information Act ("FOIA"), *see* 5 U.S.C. § 552. This matter is before the Court on defendants' motion to dismiss or, alternatively, for summary judgment. For the reasons discussed below, the motion will be granted in part and denied in part without prejudice.

### I.  BACKGROUND

On or about September 4, 2008, plaintiff submitted FOIA requests to the Executive Office for United States Attorneys ("EOUSA"), the Federal Bureau of Investigation ("FBI"), the Drug Enforcement Administration ("DEA"), the Bureau of Alcohol, Tobacco, Firearms and Explosives ("BATFE"), and the United States Secret Service ("Secret Service"). *See* Compl., Ex. P1 (EOUSA), P9 (FBI), P15 (DEA), P24 (ATF) & P35 (Secret Service). Each request included the following language:

> I request any and all documents, records, memoranda, Statements, reports, and other information in whatever form maintained by your agency that relates to or makes reference to me directly or indirectly.  More specifically, I request any information in the possession or control of your agency related to the investigation and prosecution of me by State and Federal authorities for violation of federal controlled substance and counterfeiting laws. This occurred in and around the Madison County, Tennessee area (Western District of Tennessee).  I am requesting all records from January 2006 through the present.

Compl., Ex. P1 (Freedom of Information/Privacy Request to the EOUSA dated September 4, 2008) at 1.

### A.  Executive Office for United States Attorney

The EOUSA acknowledged receipt of plaintiff's FOIA request, No. 08-3384, and forwarded it to the United States Attorney's Office for the Western District of Tennessee.  Mem. of P. & A. in Supp. of Defs.' Mot. to Dismiss, or Alternatively, for Summ. J. ("Defs.' Mem."), Decl. of John W. Kornmeier ("Kornmeier Decl.") ¶ 5.  Staff at that office located responsive records and forwarded them to the EOUSA for processing.  Kornmeier Decl. ¶ 6.  The EOUSA released 293 pages of records in full, released 10 pages in part, and withheld 39 pages in full. *Id.*; *see id.*, Ex. B (Letter to plaintiff from William G. Stewart II, Assistant Director, Freedom of Information & Privacy Staff, EOUSA, dated February 13, 2010) at 1.

In addition to records originating at the EOUSA, the search yielded 165 pages of records originating elsewhere.  *Id.*, Ex. B at 2.  The EOUSA referred 15 pages of records to the Secret Service, 147 pages of records to the DEA (DEA FOIA No. 10-00574-PR), and 3 pages of records to the BATFE (Request No. 2010-644).

### B. *Federal Bureau of Investigation*

The FBI acknowledged receipt of plaintiff's FOIA request, FOIPA No. 1119833, on

September 18, 2008.  Defs.' Mem., Decl. of David M. Hardy ("Hardy Decl.") ¶ 6.  "[A]  search

of the automated and manual indices of the [Central Records System] located no FBIHQ records

responsive to his request."  Hardy Decl. ¶ 7.  Plaintiff pursued an administrative appeal to the

DOJ's Office of Information Policy ("OIP"), *id.* ¶ 8, which affirmed the FBI's "no records"

determination, *id.* ¶ 9.

### C. *Drug Enforcement Administration*

#### DEA FOIA Request No. 08-1373-P

Because plaintiff's initial request to the DEA, assigned FOIA number 08-1373-P, did not

adequately describe the records sought, *see* Defs.' Mem., Decl. of William C. Little, Jr. ("Little

Decl.") ¶ 15, plaintiff later specified that he requested a "search [of] the DEA's Investigative

reporting and Filing System, the DEA's Electronic Surveillance idices [sic], and any other DEA

data systems" that may contain relevant information."  Little Decl., Ex. D (Letter from plaintiff

to Kathryn L. Myrick, Freedom of Information Unit, DEA, dated December 11, 2008).  The

DEA released 22 pages of records in part, released three pages in full, and withheld five pages of

records in full.  *Id.* ¶ 19; *see id.*, Ex. D (Letter to plaintiff from K.L. Myrick, Chief, Operations

Unit, FOI/Records Management Section, DEA, dated June 17, 2010) at 3.

#### DEA FOIA Request No. 10-0574-PR

The EOUSA referred 147 pages of records to the DEA.  Little Decl. ¶ 22.  It was

determined that only 22 of these 147 pages of records originated with the DEA.  *Id.* n.2.

Although the DEA referred 10 pages of records to the FBI for its direct response to plaintiff, *id.* ¶ 23, the disposition of these records is unknown.  The remainder of the records originated with state and local law enforcement agencies.  *Id.* ¶ 22 n.2.  Of the DEA records, 22 pages were released in part, 62 pages were released in full, and five pages were withheld in full.  *Id.* ¶ 24.

### D. Bureau of Alcohol, Tobacco, Firearms and Explosives

### Request No. 08-1538

Based on the language of plaintiff's request, the BATFE's search "failed to produce" responsive records.  Defs.' Mem., Decl. of Marilyn R. LaBrie ("LaBrie Decl.") ¶ 5.  This determination was affirmed on plaintiff's appeal to the OIP.  *See id.* ¶¶ 6-8.

### Request No. 2010-644

The records referred by the EOUSA to the BATFE comprised a separate matter assigned Request No. 2010-644.  *Id.* ¶ 9; *see id.*, Ex. H (Letter to plaintiff from Marilyn R. LaBrie, Team Leader, Disclosure Division, BATFE, dated March 9, 2010).  The records "consist[ed] of firearms trace information that can only be provided to a law enforcement agency or a prosecutor solely in connection with a bona fide criminal investigation or prosecution."  *Id.* ¶ 9.  Federal law prohibited BATFE from processing a request from a private individual, and the request therefore was denied.  *Id.*  Plaintiff pursued an administrative appeal to the OIP which affirmed the determination on modified grounds.  *Id.* ¶¶ 11-12.  OIP took the position that the BATFE "properly withheld . . . information . . . protected from disclosure . . . pursuant to 5 U.S.C. § 552(b)(3)," concerning "matters specifically exempted from release by statute."  *Id.*, Ex. J (Letter to plaintiff from Janice Galli McLeod, Associate Director, OIP, dated July 2, 2010).

*E.  Secret Service*

After plaintiff supplied certification of his identity, *see* Defs.' Mem., Decl. of Keith L. Prewitt ("Prewitt Decl.") ¶¶ 7-9, and it was determined that Exemption 7(A) no longer applied, *see id.* ¶¶ 11-12, the Secret Service released an unspecified number of pages of records in full or in part, *see generally id.*, Ex. I (Letter to plaintiff from Craig W. Ulmer, Special Agent In Charge, Freedom of Information & Privacy Acts Officer, Secret Service, dated March 4, 2010).[1] It released additional records to plaintiff on August 13, 2010, December 10, 2010, and May 27, 2011.  *Id.* ¶¶ 17-19.

II.  DISCUSSION[2]

*A.  Summary Judgment in a FOIA Case*

"FOIA cases typically and appropriately are decided on motions for summary judgment." *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009).  The Court will grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a).  In a FOIA action to compel production of agency records, the agency "is entitled to summary judgment if no material facts are in dispute and if it demonstrates 'that each document that falls within the class requested either has been produced . . . or is wholly exempt from the [FOIA's] inspection

---

[1]     In addition, the Secret Service referred records to the EOUSA for its direct response to plaintiff, Prewitt Decl. ¶ 15, and all were "released . . . to [plaintiff] in full on March 10, 2010." Kornmeier Decl. ¶ 6 n.1.

[2]     The Court denies defendants' motion to dismiss on the ground that plaintiff failed to exhaust his administrative remedies with respect to his FOIA request to the EOUSA.  *See* Defs.' Mem. at 4-6.  By the time plaintiff received the documents from the EOUSA, he already had filed this lawsuit.  *See* Pl.'s Opp'n at 7-8.

requirements.'" *Students Against Genocide v. Dep't of State*, 257 F.3d 828, 833 (D.C. Cir. 2001)

(quoting *Goland v. Cent. Intelligence Agency*, 607 F.2d 339, 352 (D.C. Cir. 1978)).

Summary judgment may be based solely on information provided in an agency's

supporting affidavits or declarations if they are relatively detailed and when they describe "the

documents and the justifications for nondisclosure with reasonably specific detail, demonstrate

that the information withheld logically falls within the claimed exemption, and are not

controverted by either contrary evidence in the record [or] by evidence of agency bad faith."

*Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981).  "To successfully challenge

an agency's showing that it complied with the FOIA, the plaintiff must come forward with

'specific facts' demonstrating that there is a genuine issue with respect to whether the agency has

improperly withheld extant agency records."  *Span v. U.S. Dep't of Justice*, 696 F. Supp. 2d 113,

119 (D.D.C. 2010) (quoting *Dep't of Justice v. Tax Analysts,* 492 U.S. 136, 142 (1989)).

### B.  Searches for Responsive Records

Upon receipt of a request under the FOIA, an agency generally must search its records for

responsive documents.  *See* 5 U.S.C. § 552(a)(3)(A).  "The adequacy of an agency's search is

measured by a standard of reasonableness and is dependent upon the circumstances of the case."

*Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983) (internal quotation

marks and citations omitted).  An agency "fulfills its obligations under FOIA if it can

demonstrate beyond material doubt that its search was reasonably calculated to uncover all

relevant documents."  *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 514

(D.C. Cir. 2011) (citations and internal quotation marks omitted).  A search need not be

exhaustive.  *See Miller v. U.S. Dep't of State,* 779 F.2d 1378, 1383 (8th Cir. 1995).  "The issue in

a FOIA case is not whether the [agency's] searches uncovered responsive documents, but rather whether the searches were reasonable." *Moore v. Aspin*, 916 F. Supp. 32, 35 (D.D.C. 1996) (citations omitted).

To meet its burden, the agency may submit affidavits or declarations that explain in reasonable detail the scope and method of the agency's search. *Perry v. Block*, 684 F.2d 121, 126 (D.C. Cir. 1982). In the absence of contrary evidence, such affidavits or declarations are sufficient to demonstrate an agency's compliance with the FOIA. *Id.* at 127. On the other hand, if the record "leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper." *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990); *see also Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999).

### 1. The EOUSA's Search

The EOUSA's declarant states only that plaintiff's FOIA request was "forwarded [to] the [United States Attorney's Office] for the Western District of Tennessee for a search," and that that office "found records which it forwarded to EOUSA." Kornmeier Decl. ¶ 5. He does not describe the types of records maintained at the office, the records actually searched, the scope or method of the search, or a description of the responsive records.[3] Without additional information, the Court cannot determine whether the search was reasonable under the circumstances.

---

[3]     The EOUSA's supporting declaration is deficient in one other respect. It fails to explain the EOUSA's rationale for withholding information under Exemptions 3, 5 and 7(C). Even if the search were adequate, neither plaintiff nor the Court can determine whether any information has properly been withheld. Furthermore, there is no discussion of the disposition of the 15 pages of records referred by the EOUSA to the Secret Service.

## 2. The FBI's Search

The FBI's Central Records System ("CRS") "enables the FBI to maintain information . . . acquired in the course of fulfilling its . . . law enforcement responsibilities." Hardy Decl. ¶ 11. The CRS includes "administrative, applicant, criminal, personnel and other files compiled for law enforcement purposes," and "consists of a numerical sequence of files, called 'classifications,' which are broken down [by] subject matter." *Id.* The subject matter of a CRS file "may relate to an individual, organization, company, publication, activity or foreign intelligence matter (or program)." *Id.* FBIHQ maintains certain CRS records; FBI field offices maintain those CRS records "that are pertinent to specific field offices." *Id.* In order to search the CRS, "the FBI uses . . . the Automated Case Support System ('ACS')." *Id.*

The ACS is "an internal computerized subsystem of the CRS," *id.* ¶ 12, which makes it possible to retrieve data from the CRS using alphabetically-arranged General Indices. *Id.* ¶ 13. "The General Indices consist of index cards on various subject matters that are searched either manually or though the automated indices." *Id.* There are two categories of General Indices:

> (a) A "main" entry – A "main" entry, or "main" file, carries the name corresponding with a subject of a file contained in the CRS.
>
> (b) A "reference" entry – A "reference" entry, sometimes called [a] "cross reference[]," [is] generally only a mere mention or reference to an individual, organization, or other subject matter, contained in a document located in another "main" file on a different subject matter.

*Id.* A search of the General Indices "to locate records concerning a particular subject, such as Oliver J. Higgins, [is] made by searching the subject requested in the index." *Id.* ¶ 14.

"The ACS consists of three integrated, yet separately functional, automated applications that support case management functions for all FBI investigative and administrative cases." *Id.* ¶

15.  The Investigative Case Management application "provides for the ability to open, assign, and close investigative and administrative cases [and to] set, assign, and track leads." *Id.* ¶ 15(a). Each new case is assigned a Universal Case File Number "which is used by all FBIHQ, as well as all FBI field offices . . . that are conducting or assisting in the investigation." *Id.*  The Electronic Case File application "serves as the central electronic repository for the FBI's official text-based documents." *Id.* ¶ 15(b).  The Universal Index application provides "a complete subject/case index to all investigative and administrative cases." *Id.* ¶ 15(c).  The FBI does not index every name in its files; individual FBI Special Agents assigned to an investigation decide whether "to index names other than subjects, suspects, and victims." *Id.* ¶ 16.  Without an index "to this enormous amount of data, information essential to ongoing investigations could not be readily retrieved," and the agency's files "would thus be merely archival in nature." *Id.*  "[T]he General Indices to the CRS are the means by which the FBI can determine what retrievable information, if any, [it] may have in its CRS files on a particular subject matter or individual, such as Oliver Junior Higgins." *Id.*

Plaintiff directed his request for information about himself to the FBI's Washington, DC headquarters office ("FBIHQ").  *See* Compl., Ex. P9 at 1.  Staff "conducted a search of the CRS to identify all potentially responsive files indexed to Oliver Junior Higgins . . . using a six-way phonetic breakdown" of his name, using "such variations as 'Higgins, Oliver' and 'Junior Oliver Higgins.'"  Hardy Decl. ¶ 17.  This search yielded no "main investigatory files for FBIHQ responsive to plaintiff's request." *Id.*  Nor did a subsequent search "to locate cross-references" yield "any cross references indexed to 'Oliver Junior Higgins.'" *Id.*

FBIHQ notified plaintiff that no records responsive to his FOIA request were located  in the CRS at FBIHQ, and instructed that, if plaintiff "believe[d] the records [he sought] are

maintained in one of [the] many FBI field offices," he must submit a separate request to those

particular field offices.  *Id.*, Ex. C (Letter to plaintiff from David M. Hardy, Section Chief,

Record/Information Dissemination Section, Records Management Division, FBI, dated

September 23, 2008).  Plaintiff "specifically requested that the [FBIHQ] advise him of any FBI

field office that may have records on him."  Pl.'s Opp'n to Defs.' Mot. for Summ. J. ("Pl.'s

Opp'n") at 10-11.

Plaintiff scoffs at the notion that a requester be "expected to contact the 100-plus FBI

field offices in an effort to discover of one of them has any records" about him, and he deems

"the FBI's expectation in this regard" to be "obstructiveness clothed in plausible deniability."  *Id.*

at 11.  However, as the requester, it is plaintiff's responsibility to tell the FBI where responsive

records might be located.  In fact, DOJ regulations require that, if plaintiff believed that

responsive records pertaining to activity in Tennessee existed, he must "write directly to that FBI

. . . field office address," 28 C.F.R. § 16.3(a), rather than direct his request to FBIHQ.  The FBI

does not fail to meet its obligations under the FOIA by conducting a search of FBIHQ records

only.  *See Brown v. FBI,* 675 F. Supp. 2d 122, 127 (D.D.C. 2009) (dismissing a FOIA claim

against the FBI because plaintiff failed to mail his request directly to the appropriate field office

as is required under agency regulations).

### 3.  The DEA's Search

DEA staff construed the FOIA request as one "seeking criminal investigative records

held by DEA that pertained to or referenced" plaintiff.  Little Decl. ¶ 25.  "All criminal

investigative records maintained by DEA about any individual that is of investigative interest are

reasonably likely to be found in the DEA Investigative Reporting and Filing System (IRFS)," *id.*

¶ 26, and no other, *id.* ¶ 27.  IRFS "contains all administrative, general and investigative files

compiled by DEA for law enforcement purposes."  *Id*. ¶ 28.  The Narcotics and Dangerous

Drugs Information System ("NADDIS") is the index by which information is retrieved from

IRFS.  *Id.*  "NADDIS lists the investigative file number(s) and particular DEA Report of

Investigation (ROI), DEA Form-6, or other documents by date, that contain information

regarding a particular individual."  *Id.* ¶ 29.  An individual is indexed in NADDIS by his name,

Social Security number, and date of birth.  *Id.*

Using plaintiff's name, Social Security number and date of birth as search terms, DEA

staff conducted a NADDIS query which yielded "two . . . criminal investigative case file

numbers, DEA Investigative Case File No[s]. GN-06-0019 and GN-86-Z002."  *Id.* ¶ 30.

Retrieved from these files were 31 pages of records, *id.* ¶ 31, were the following: a DEA

Defendant Disposition Report, a DEA Personal History Report, Reports of Investigations, an FBI

fingerprint card, and a photograph, *id.* ¶ 43.

Because plaintiff "was charged with violating federal controlled substance laws" and

because "[a] DEA task force investigated, arrested, and assisted in the federal prosecution,"

plaintiff dismisses as "not believable" the DEA's claim that only 31 pages of records were

located.  Pl.'s Opp'n at 12.  "There must be more records than 31 pages related to Higgins' DEA

investigation," plaintiff surmises, and deems the dearth of records a sign that the agency's search

was inadequate.  *Id.*

The level of plaintiff's satisfaction with the results of the search is not dispositive.  "[T]he

issue to be resolved is not whether there might exist any other documents possibly responsive to

the request, but rather whether the search for those documents was adequate."  *Weisberg*, 705

F.2d at 1351 (citing *Perry*, 684 F.2d at 128).  Plaintiff's mere "speculation as to the existence of additional records . . . does not render the search[] inadequate." *Concepción v. Fed. Bureau of Investigation,* 606 F. Supp. 2d 14, 30 (D.D.C. 2009); *see Baker & Hostetler LLP v. U.S. Dep't of Commerce*, 473 F.3d 312, 318 (D.C. Cir. 2006) (finding the requester's "assertion that an adequate search would have yielded more documents is mere speculation" and affirming district court's decision that agency's search procedure was "reasonably calculated to generate responsive documents").  Moreover, the DEA's supporting declaration is "accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other document," *SafeCard Servs., Inc. v. Sec. & Exch. Comm'n,* 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal quotation marks and citation omitted), and here, plaintiff fails to present evidence rebutting the agency's initial showing of a good faith search. *See Maynard v. Central Intelligence Agency*, 986 F.2d 547, 560 (1st Cir. 1993); *Weisberg*, 705 F.2d at 1351-52.

### 4.  The BATFE's Search

Upon receipt of a FOIA request, BATFE staff query TECS, the Treasury Enforcement Communications System.  LaBrie Decl. ¶ 18.  TECS, "a text-based database," is "a computerized information system designed to identify individuals and businesses suspected of or involved in violation of federal law." *Id.*  TECS serves as the BATFE's "comprehensive . . . law enforcement database that contains [the agency's] investigative records." *Id.*  Such records typically "contain: information compiled for the purpose of identifying criminal offenders, alleged criminal offenders, suspects, and individuals who have been referred to [BATFE] by other law enforcement agencies[,] and information compiled for the purpose of criminal investigation for violations or suspected violation of the laws enforced by [BATFE]." *Id.*

According to the declarant, "TECS is the database most likely to reveal responsive records for [plaintiff] because it contains the names of individuals referred to [BATFE] or that [BATFE] has investigated." *Id.* A TECS query yielded no responsive records. *Id.* ¶ 23.

The declarant explains that the case management system "N-Force" serves "as a single point of data entry system" which "enables users to store, utilize, and query investigative information, and to prepare investigative documents." *Id.* ¶ 19. "Each criminal investigation . . . is assigned a unique case number." *Id.* The fields for data "may be populated with, among other things: information about the type of investigation being conducted, the persons involved (suspect, witnesses, agents, etc.), property seized reports of investigation, [and] the types of techniques and services employed during the investigation." *Id.* One queries N-Force using "information regarding an individual, including name, date of birth or social security number, by property or vehicles associated with an individual, or through a full text search which identifies specific words found in [BATFE's] Reports of Investigation." *Id.* It appears that an N-Force query identified case number 776036-06-0037 in connection with plaintiff. *See id.* ¶¶ 19-20.

Plaintiff's request was referred to the BATFE's Nashville Field Division, *id.* ¶ 20, and its staff "ran an 'N-Force' query on Oliver Higgins, case number 776036-06-0037," but the search did not produce any records pertaining to plaintiff. *Id.* ¶ 21. Rather, "records and a disc were found for a co-defendant in the underlying prosecution." *Id.* Plaintiff was notified that, based on the information provided in his request, BATFE's search "failed to produce the requested information." *Id.* ¶ 5.

According to plaintiff, there are no co-defendants -- he "was arrested alone, charged alone, prosecuted alone, and sentenced alone," and now demands that the BATFE "be required

to provide further information . . . to clarify who this co-defendant is and what records are controlled by the BATF[E] related to this individual." Pl.'s Opp'n at 18.  Missing from plaintiff's opposition is any rationale for the agency to have concluded that records pertaining to a third party fall within the scope of his FOIA request.  Plaintiff's request for information about himself does not obligate any agency to search for and disclose records pertaining to any other individual.  *See, e.g., Kenney v. U.S. Dep't of Justice,* 603 F. Supp. 2d 184, 189 (D.D.C. 2009) ("Plaintiff cannot allege that the agency failed to produce responsive records, when the records he now identifies fall outside the scope of his appropriately narrowed request."); *cf. Kowalczyk v. Dep't of Justice*, 73 F.3d 386, 389 (D.C. Cir. 1996) (stating that an agency "is not obliged to look beyond the four corners of the request for leads to the location of responsive documents").

### 5.   The Secret Service's Search

The Secret Service's Common Index ("CI") is used to search for information contained in other systems, including the Master Central Index ("MCI").  Prewitt Decl. ¶ 20.  The MCI, described as "an on-line computer system used by all Secret Service field offices, resident offices, protective divisions, and headquarters divisions," serves as a recordkeeping system "for cases and subjects of record in investigative, protective, and administrative files maintained by the Secret Service."  *Id.* ¶ 21.  "If the Secret Service maintains records on a particular individual, a search of that individual's name in the CI should result in a list of file number(s) for the investigative or administrative file(s) associated with that individual's name or other personal identifier."  *Id.* ¶ 27.

Because plaintiff seeks information about himself, Secret Service staff conducted a search of the CI, and that "search . . . identified a single investigative case file, J-310-735-25965-

S, . . . maintained by the Secret Service's Memphis Field Office." *Id.* ¶ 28. "Plaintiff's date of birth and social security number . . . confirm[ed] that this case file in fact concerned Plaintiff." *Id.* The file was retrieved from the Memphis Field Office. *Id.* ¶ 29. The records pertained to "a counterfeit investigation," *id.* ¶ 33, and they were released to plaintiff in redacted form, *id.* ¶ 38.[4]

## C. Exemptions

### 1. Exemption 3

Exemption 3 protects records that are "specifically exempted from disclosure by statute . . . provided that such statute (A) [requires withholding] in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552 (b)(3). The BATFE withholds "the Firearm Trace Report pursuant to Exemption 3 and the Consolidated Appropriations Act [of 2005, Pub. L. No. 108-447, 118 Stat. 2809, 2859 (2004)], and[/]or Exemption 3 and the Consolidated Appropriations Act of [2008, Pub. L. No. 110-161, 121 Stat. 1844, 1904 (2008)]." Labrie Decl. ¶ 14. She quotes the following relevant provision of Public Law 108-447:

> [N]o funds appropriated under this or any other Act with respect to any fiscal year may be used to disclose part or all of the contents of the Firearms Trace System database maintained by the National Trace Center of the [BATFE] or any information required to be kept by licensees pursuant to section 923(g) of title 18, United States Code, or required to be reported pursuant to paragraphs (3) and (7) of such section 923(g), to anyone other than a Federal, State, or local law enforcement agency or a prosecutor solely in connection with and for use in a bona fide criminal investigation or

---

[4]     Searches of files maintained by the Investigative Support Division, the databases of which "contain information regarding Secret Service criminal investigations," Prewitt Decl. ¶ 21, and the Uniformed Division, which "provides protection to the White House Complex," among other places, *id.* ¶ 32, yielded no responsive records, *id.* ¶¶ 30-32.

> prosecution . . . .   [A]ll such data shall be immune from legal
> process and shall not be subject to subpoena or other discovery in
> any civil action in a State or Federal court or in any administrative
> proceeding other than a proceeding commenced by the [BATFE] . .
> . or a review of such action or proceeding.

LaBrie Decl. ¶ 15.[5]  More recent legislation contains similar language.  *See id.* ¶ 16 (quoting the

Consolidated Appropriations Act of 2010, Pub. L. No. 111-117, 123 Stat. 3034, 3128-29 (2009)).

The three pages of records referred by EOUSA to BATFE, *see* LaBrie Decl. ¶ 10,

"consist[ed] of a Firearms Trace Report, all related to the same firearms, and which are wholly

derived from and/or related to the contents of the Firearms Trace System Database referred to in

Public Law[s] 108-447 and 111-117," *id.* ¶ 17.   In addition, the report is "based [on] and derived

from information required to be kept by a Federal Firearms Licensee . . . pursuant to 18 U.S.C.

[§] 923(g)."  *Id.*  In short, the declarant states that records responsive to plaintiff's "request

contained material subject to Public Law 110-161 . . .  which squarely falls within subpart (A) of

FOIA Exemption [3]," LaBrie Decl. ¶ 13, and, therefore, all three pages were withheld in full

pursuant to Exemption 3, *id.* ¶ 17. The Court concurs.  The appropriations legislation on which

the BATFE relies explicitly bars disclosure of information "maintained by the National Trace

Center . . . or any information required to be kept by licensees pursuant to [18 U.S.C. §] 923(g) .

. . and all such data shall be immune from legal process."  *Caruso v. U.S. Bureau of Alcohol,*

*Tobacco & Firearms*, No. 11-35196, 2012 WL 3727601, at *2 (9th Cir. Aug. 29, 2012) (citation

omitted and emphasis removed); *McRae v. U.S. Dep't of Justice*, 869 F. Supp. 2d 151, 163

(D.D.C. 2012) (Public Law 108-447); *Skinner v. U.S. Dep't of Justice*, 744 F. Supp. 2d 185, 204

(D.D.C. 2010).

---

[5]      The declarant explains that the language quoted above remains in effect notwithstanding
that various iterations of appropriations legislation passed since 2003.  *See* LaBrie Decl. ¶¶ 15-
16.

2.  Exemption 7

a.  Law Enforcement Records

FOIA Exemption 7 protects from disclosure "records or information compiled for law enforcement purposes," but only to the extent that disclosure of such records would cause an enumerated harm.  5 U.S.C. § 552(b)(7); *see FBI v. Abramson*, 456 U.S. 615, 622 (1982).  "To show that . . . documents were compiled for law enforcement purposes, the [agency] need only establish a rational nexus between the investigation and one of the agency's law enforcement duties and a connection between an individual or incident and a possible security risk or violation of federal law."  *Blackwell v. FBI*, 646 F.3d 37, 40 (D.C. Cir. 2011) (internal quotation marks and citations omitted).  It is apparent not only from the nature of the FOIA request but also from the type and content of the documents produced by the DEA and the Secret Service that the responsive records were compiled for law enforcement purposes.

"In 2006, Oliver Higgins . . . was indicted and charged with six counts: possession with intent to distribute cocaine base, possession with intent to distribute cocaine, possession with intent to distribute marijuana, possession of counterfeit currency with intent to defraud, felon in possession of a firearm, and possession of a firearm in connection with a drug-trafficking crime." *United States v. Higgins*, 557 F.3d 381, 384 (6th Cir. 2009).  His convictions were affirmed on appeal, and plaintiff now is serving an "effective sentence of life imprisonment plus five years." *Id.*; *see id.* at 398.

The DEA's declarant explains that the agency's "investigative jurisdiction derives from the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. § 801[] *et seq.*," which authorizes "the investigation of incidences involving the trafficking in controlled substances, dangerous drugs and precursor chemicals and the violators who operate at interstate

and international levels," and the seizure and forfeiture of assets "derived from, traceable to, or intended to be used for illicit drug trafficking."  Little Decl. ¶ 50.  The relevant records, he states, "were compiled during criminal law enforcement investigations of the plaintiff and several third parties."  *Id.* ¶ 51.

The Secret Service is described as "a criminal law enforcement agency created under title 18 of the United States Code, section 3056."  Prewitt Decl. ¶ 48; *see id.* ¶ 35.  All the records responsive to plaintiff's FOIA request were "compiled in connection with the Secret Service's investigative mission and under its authority to conduct such investigations," *id.*, namely "a counterfeit investigation," *id.* ¶ 33.

Both the DEA and the Secret Service easily make the threshold showing that the relevant records are law enforcement records for purposes of Exemption 7.

### b.  Exemption 7(C)

FOIA Exemption 7(C) protects from disclosure information in law enforcement records that "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552 (b)(7)(C).  "In deciding whether the release of particular information constitutes an unwarranted invasion of privacy under Exemption 7(C), [the Court] must balance the public interest in disclosure against the [privacy] interest Congress intended the Exemption to protect."  *ACLU v. U.S. Dep't of Justice*, 655 F.3d 1, 6 (D.C. Cir. 2011) (internal quotation marks and citation omitted); *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1115 (D.C. Cir. 2007); *Beck v. U.S. Dep't of Justice*, 997 F.2d 1489, 1491 (D.C. Cir. 1993).  The privacy interest at stake belongs to the individual, not the government agency, *see U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 763-65 (1989), and "individuals have a strong interest in not being associated unwarrantedly with alleged criminal activity," *Stern v. FBI*, 737

F.2d 84, 91-92 (D.C. Cir. 1984).  When balancing the private interest against the public interest

in disclosure, "the only public interest relevant for purposes of Exemption 7(C) is one that

focuses on 'the citizens' right to be informed about what their government is up to.'"  *Davis v.*

*U.S. Dep't of Justice*, 968 F.2d 1276, 1282 (D.C. Cir. 1992) (quoting *Reporters Comm.*, 489 U.S.

at 773); *see also Sussman*, 494 F.3d at 1115.  It is a FOIA requester's obligation to articulate a

public interest sufficient to outweigh an individual's privacy interest, and the public interest must

be significant.  *See Nat'l Archives and Records Admin. v. Favish*, 541 U.S. 157, 172 (2004).

### i.  DEA Records

The DEA withholds under Exemption 7(C) "[t]he identities of DEA Special agents, and

other state and local law enforcement officers."  Little Decl. ¶ 55.  The declarant explains that

release of "their identities and information pertaining to [them] would place [them] in a position

that they may suffer undue invasions of privacy, harassment and humiliation" where, as here, the

disclosure occurs "in the context of a criminal investigation."  *Id.*  Furthermore, these officers

"were assigned to handle tasks relating to the official investigation [of] the criminal activities of

the plaintiff and other individuals," and the declarant explains that "[t]hey were, and possibly

still are, in positions of access to information regarding official law enforcement investigations."

*Id.* ¶ 56.  Disclosure of their identities could render them "targets of harassing inquiries for

unauthorized access to information pertaining to ongoing and closed investigations."  *Id.*  The

declarant balanced "the individuals' privacy interests . . . against any discernible public interest

in disclosure of [their] identities," *Id.* ¶ 53, and identifies no public interest, that is, no

information that "would inform the plaintiff or the general public about DEA's performance of

its mission . . . and/or how [it] conducts its internal operations and investigations," *id.* ¶ 54, thus

concluding that "release of any information about [these third parties] would constitute an unwarranted invasion of [their] personal privacy." *Id.*

"Since the [DEA] will not divulge exactly what the material is specifically, [plaintiff] can only assume that it relates to" the DEA's investigation and the prosecution of his criminal case "in a general sense," and "[s]uch information was publicly released in the news media at that time." Pl.'s Opp'n at 13. In addition, "much of the details related to [plaintiff's] federal drug case was [sic] brought out during . . . judicial proceedings in the federal District Court of the United States," such that DEA's "reliance on Exemptions 7(C) and 7(D) should not be upheld . . . ." *Id.* at 14.

It is true that public disclosure of information may lead to the waiver of a FOIA exemption, but plaintiff bears the initial burden of showing that the requested information: (1) is as specific as the information previously disclosed; (2) matches the information previously disclosed; and (3) was made public through an official and documented disclosure. *See Cottone v. Reno,* 193 F.3d 550, 554 (D.C. Cir. 1999); *Fitzgibbon v. CIA,* 911 F.2d 755, 765 (D.C. Cir. 1990). "Prior disclosure of similar information does not suffice; instead, *the specific information sought by the plaintiff* must already be in the public domain." *Wolfe v. CIA,* 473 F.3d 370, 378 (D.C. Cir. 2007) (citation omitted) (emphasis added). Speculation as to the content of the withheld information does not establish that it has entered the public domain. *See Whalen v. U.S. Marine Corps,* 407 F. Supp. 2d 54, 59 (D.D.C. 2005) (noting that a requester's "educated guess" as to contents of a withheld report does not constitute a waiver of a FOIA exemption). Furthermore, the privacy interests belong to the individuals, not to the government agency.[6] For

---

[6]     The public domain doctrine does not render the DEA's decision to withhold information under Exemption 7(D) improper. Even if the identity of or information provided by a source had

example, a third party may testify in open court and maintain an interest in his personal privacy. *See, e.g., Jones v. FBI*, 41 F.3d 238, 247 (6th Cir. 1994).  And he maintains an interest in his personal privacy even if the requester already knows, or is able to guess, his identity.  *See Weisberg v. Dep't of Justice*, 745 F.2d 1476, 1491 (D.C. Cir. 1984).

### ii.  Secret Service Records[7]

The Secret Service relies on Exemption 7(C) to withhold "the names of Secret Service personnel and law enforcement personnel from other agencies  . . .  to avoid subjecting [these] public servants to harassment and annoyance either in the conduct of their official duties or their private lives."  Prewitt Decl. ¶ 49.  In addition, the agency withholds the "Secret Service identification numbers of Agency personnel," *id.* ¶ 53; *see id.*, Ex. P-Q (Vaughn Index, Doc. Nos. 9, 11 & 14), on the ground that release "could infringe upon the employee's privacy rights by allowing [someone] to gain personal information about" him or her, *id.* ¶ 54. Also under Exemption 7(C), the agency withholds "the Social Security Number . . . of an individual other

---

been disclosed at trial or to the news media, a government agency still invokes Exemption 7(D) to protect his or her identity.  *See Davis v. United States Dep't of Justice,* 968 F.2d 1276, 1281 (D.C. Cir. 1992) ("Even when the source testifies in open court, as did the informant in this case, he does not thereby waive the [government's] right to invoke Exemption 7(D) to withhold ... information furnished by a confidential source not actually revealed in public.") (citation and internal quotation marks omitted) (brackets in original); *Span*, 696 F. Supp. 2d at 122 (rejecting public domain argument based on requester's speculation that information contained in redacted documents had been released to newspapers, websites and other media outlets).

[7]      The Secret Service withholds identification numbers of agency personnel under Exemptions 2, 6 and 7(C).  Prewitt Decl. ¶¶ 44.  It also withholds the names of Secret Service personnel and law enforcement personnel from other agencies, *id.* ¶ 49, the Social Security number of a third party, *id.* ¶ 51, and the Secret Service identification number of Secret Service personnel, *id.* ¶ 53, under Exemptions 6 and 7(C).  *See id.*, Ex. P (Vaughn Index).  Similarly, the DEA withholds the identity of a source and the identities of third parties, Little Decl. ¶¶ 63-64; *see id.*, Ex. N (Vaughn Index at pp. 15-16, 27-31), under Exemption (C) in conjunction with Exemption 7(F).  Because this information properly is withheld under Exemption 7(C) alone, the Court need not determine the applicability of any other exemption with respect to this same information.  *See Roth v. U.S. Dep't of Justice*, 642 F.3d 1161, 1173 (D.C. Cir. 2011); *Simon v. Dep't of Justice*, 980 F.2d 782, 785 (D.C. Cir. 1994).

than [p]laintiff who was not related to the matter being investigated [yet] appeared in the results of a records check conducted on [p]laintiff." *Id.* ¶ 51; *see id.*, Ex. P (Vaughn Index , Doc. No. 13).  In no circumstance does the Secret Service identify a public interest in disclosure of this information to outweigh the third parties' privacy interests. *See id.* ¶¶ 50, 52 & 54.  Plaintiff does not challenge these withholdings. *See generally* Pl.'s Opp'n.

Exemption 7(C) "recognizes the stigma potentially associated with law enforcement investigations and affords broader privacy rights to suspects, witnesses, and investigators." *Bast v. U.S. Dep't of Justice,* 665 F.2d 1251, 1254 (D.C. Cir. 1981).  The District of Columbia Circuit has held "categorically that, unless access to the names and addresses of private individuals appearing in files within the ambit of Exemption 7(C) is necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity, such information is exempt from disclosure." *SafeCard Servs.*, 926 F.2d at 1206.  The DEA and Secret Service decisions to withhold this third-party information from the responsive records is proper. *See, e.g., Brown v. FBI*, 873 F. Supp. 2d 388, 404 (D.D.C. 2012) (concluding that FBI "properly invoked exemption 7(C) regarding the names and identifying information of state and local law enforcement personnel and non-FBI federal government personnel"); *McRae*, 869 F. Supp. 2d at 166 (concluding that ATF properly withheld "the names of and identifying information about federal and state law enforcement agents and third parties whose names appear in the responsive records"); *Thompson v. U.S. Dep't of Justice*, 851 F. Supp. 2d 89, 99 (D.D.C. 2012) (approving the withholding of names of and identifying information about FBI Agents and support personnel, third parties of investigative interest to FBI, third parties merely mentioned in documents related to criminal investigation of plaintiff, and individuals interviewed by the FBI during the investigation).

c.  Exemption 7(D)

Exemption 7(D) protects from disclosure records or information compiled for law enforcement purposes that:

> could reasonably be expected to disclose the identity of a confidential source . . . [who] furnished information on a confidential basis, and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation . . ., information furnished by a confidential source.

5 U.S.C. § 552(b)(7)(D).  There is no general "presumption that a source is confidential within the meaning of Exemption 7(D) whenever [a] source provides information [to a law enforcement agency] in the course of a criminal investigation."  *U.S. Dep't of Justice v. Landano*, 508 U.S. 165, 181 (1993).  Rather, a source's confidentiality must be determined on a case-by-case basis. *Id*. at 179-80.  "A source is confidential within the meaning of [E]xemption 7(D) if the source provided information under an express assurance of confidentiality or in circumstances from which such an assurance could be reasonably inferred."  *Williams v. FBI*, 69 F.3d 1155, 1159 (D.C. Cir. 1995) (internal quotation marks and citation omitted).

The D.C. Circuit has held that the violence and risk of retaliation attendant to drug trafficking warrant an implied grant of confidentiality to a source.  *See Mays v. DEA,* 234 F.3d 1324, 1329 (D.C. Cir. 2000) (withholding source supplying information about conspiracy to distribute crack and powder cocaine).  The nature of the crime investigated and the informant's relation to it are the most important factors in determining whether implied confidentiality exists. *Landano*, 508 U.S. at 179-80; *Coleman v. FBI,* 13 F. Supp. 2d 75, 82 (D.D.C. 1998) (finding that plaintiff's conviction "of numerous violent crimes" including murder, rape and kidnaping, as

well as "the relation of the witnesses thereto is precisely the type that the implied confidentiality exemption expressed in *Landano* is designed to encompass").

The DEA withholds under Exemption 7(D) "material provided by individual(s), other than a DEA agent, . . . regarding the criminal activities related to the illicit trafficking in drugs." Little Decl. ¶ 60. The declarant reiterates that "plaintiff was arrested for and convicted of possession with intent to distribute cocain[e] and marijuana," and that, "[a]t the time of his arrest, a handgun was recovered." *Id.* ¶ 61. The information provided by the source(s) pertained to plaintiff and to third parties and their drug trafficking activities. *Id.* ¶¶ 63-64.

The declarant explains that, in the DEA's experience, "violence is inherent in the trade in illicit substances such as cocaine and marijuana," such that "[it] is reasonable to infer that individuals who provided information about the plaintiff would fear for their safety, if their identities or the information they provided was revealed." *Id.* Presumably these individuals "would not have provided the information" to law enforcement officers "unless they believed that the information and their identity [sic] would be held in confidence and not released to the plaintiff or the public." *Id.* ¶ 62. Under these circumstances, the declarant concludes, confidentiality is implied and the information properly is withheld. *Id.*; *see id.* ¶¶ 63-64. Furthermore, he avers, release of the names of the source(s) "could jeopardize DEA operations" because "their cooperation and that of other similarly situated individuals could be needed in future criminal investigations." *Id.* ¶ 61.

Plaintiff's objection to the DEA's withholdings under Exemption 7(D) presumes incorrectly that the protected source(s) had been granted an express assurance of confidentiality. *See* Pl.'s Opp'n at 14-15. Not so – the DEA's declarant articulates the agency's rationale for withholding the identities of and information provided by sources about inherently violent

activities in order that disclosure not subject them to reprisal and to encourage others to

cooperate with law enforcement.  The DEA thus demonstrates that its decision to withhold this

material under Exemption 7(D) is proper.  *See Miller v. U.S. Dep't of Justice*, 562 F. Supp. 2d

82,  123 (D.D.C. 2008) (protecting interviewees who provided detailed information about

activities of plaintiff and his associates, particularly given plaintiff's history of kidnapping,

murder and dismemberment of bodies); *Truesdale v. U.S. Dep't of Justice*, No. 03-1332, 2005

WL 3294004, at *7 (D.D.C. Dec. 5, 2005) (protecting witnesses to drug trafficking activities of

plaintiff who had been "convicted of engaging in a continuing criminal enterprise, a conspiracy

to distribute cocaine, and firearms offenses").

### d.  Exemption 7(E)

Exemption 7(E) protects from disclosure law enforcement records "to the extent that the

production of such . . . information . . . would disclose techniques and procedures for law

enforcement investigations or prosecutions, or would disclose guidelines for law enforcement

investigations or prosecutions if such disclosure could reasonably be expected to risk

circumvention of the law."  5 U.S.C. § 552(b)(7)(E).  Courts have held that information

pertaining to law enforcement techniques and procedures properly is withheld under Exemption

7(E) where disclosure reasonably could lead to circumvention of laws or regulations.  *See, e.g.,*

*Morley v. CIA*, 453 F. Supp. 2d 137, 157 (D.D.C. 2006) (approving the withholding of

information pertaining to security clearances and background investigations on the ground that

"disclosure of CIA security clearance and investigatory processes would risk circumvention of

those processes in the future"), *rev'd on other grounds*, 508 F.3d 1108 (D.C. Cir. 2007).

DEA withholds "violator identifiers" known as "G-DEP (Geographical Drug

Enforcement Program) codes and NADDIS numbers," which are "part of DEA's internal system

of identifying information and individuals" and which "reflect procedures prescribed by the DEA Agents Manual," Little Decl. ¶ 66, under Exemption 7(E).  A G-DEP code is assigned to a case when a case file is opened, and it "indicate[s] the classification of the violator(s), the types and amount of suspected drugs involved, the priority of the investigation and the suspected location and scope of criminal activity."  *Id.* ¶ 69.  If a G-DEP code were released, the declarant explains, "[s]uspects could decode this information, change their behavior of drug trafficking in an effort to respond to what they determined DEA knows about them or avoid detection and apprehension, and allow them to create alibis for suspected activities."  *Id.*  In short, disclosure "would . . . thwart [DEA's] investigative and law enforcement efforts."  *Id.*

A NADDIS number is a multi-digit number assigned to a drug violator, suspected drug violator, or entity of investigative interest to the DEA.  *Id.* ¶ 70.  The number is unique to the violator to whom it is assigned, *id.*, and therefore is "personal to the individual to whom it is applied."  *Id.* ¶ 71.  "Because of the manner in which NADDIS numbers are assigned and methods for which they are used, release of the information could allow violators to avoid apprehension, and could place law enforcement personnel or informants in danger, since many details of a DEA investigation would be disclosed," the declarant explains.  *Id.* ¶ 72. "[V]iolators would be aware of how to respond in different situations where detection and/or apprehension are eminent [sic]."  *Id.*

In light of the Supreme Court's ruling in *Milner v. Dep't of the Navy*, __ U.S. __, __, 131 S. Ct. 1259, 1264-71 (2011), plaintiff argues that DEA must release G-DEP codes and NADDIS numbers, notwithstanding its subjective belief that the release of G-DEP and/or NADDIS material will allow all of the drug-dealing villains out there to circumvent federal controlled substances laws and the DEA's investigatory efforts in that regard."  Pl.'s Opp'n at 16.

"Conspicuously absent from the DEA's arguments would be any attempt to describe the techniques or procedures being protected other than the G-DEP and NADDIS materials." *Id.* (emphasis in original).  Plaintiff objects to these withholdings based on a rationale that DEA no longer asserts.  Notwithstanding the agency's prior reliance on Exemption 2 to protect G-DEP and NADDIS codes, *see* Little Decl. ¶ 65 n.11, the agency now relies solely on Exemption 7(E), *see id.* ¶¶ 66-72.  Its decision is appropriate in light of the *Milner* decision.  *See Miller v. U.S. Dep't of Justice*, 872 F. Supp. 2d 12, 29 (D.D.C. 2012) (finding that NADDIS numbers are properly withheld under Exemption 7(E)); *see also Adionser v. U.S. Dep't of Justice*, No. 11-5093, 2012 WL 5897172, at *2 (D.C. Cir. Nov. 5, 2012) (per curiam) (remanding "for further proceedings with respect to the Geographical Drug Enforcement Program codes withheld by DEA pursuant to . . . Exemption 2 . . . to allow the government to brief the issue whether . . . Exemption 7(E) . . . applies to the material").

### D.  Segregability

If a record contains some information that is exempt from disclosure, any reasonably segregable information must be released after deleting the exempt portions, unless the non-exempt portions are inextricably intertwined with exempt portions.  5 U.S.C. § 552(b); *see Trans-Pacific Policing Agreement v. U.S. Customs Serv.,* 177 F.3d 1022, 1027 (D.C. Cir. 1999). A court errs if it "simply approve[s] the withholding of an entire document without entering a finding on segregability, or the lack thereof."  *Powell v. U.S. Bureau of Prisons,* 927 F.2d 1239, 1242 n.4 (D.C. Cir. 1991) (quoting *Church of Scientology of Cal. v. U.S. Dep't of the Army,* 611 F.2d 738, 744 (9th Cir. 1979)).

On this topic, plaintiff's sole objection pertains to the amount of information redacted from Secret Service records.  Because "[i]t appears that the agency wiped-out entire documents .

. . in an effort to protect a name" of an agent or employee, plaintiff argues that the approach "of non-disclosure is not consistent with the exemptions assorted or the case law defining such exemptions." Pl.'s Opp'n at 20. He asserts that the Secret Service "has withheld information that has no connection to legitimate material that could violate individuals' privacy rights," and provides "no rationale in redacting agents' names when those agents openly investigated Higgins and appeared at judicial proceedings." *Id.* at 20.

As discussed above, the fact that law enforcement agents may have testified in a court proceeding does not amount to a waiver of their personal privacy interests. The Secret Service is not obliged to release information which it rightfully protects under Exemption 7(C).

The declarants represent, that, upon careful review of the responsive records maintained by the DEA and Secret Service, all reasonably segregable records and portions of records have been released to plaintiff. Little Decl. ¶¶ 80-85; Prewitt Decl. ¶¶ 55-56. Based upon the Court's review of the declarations, Vaughn indices and copies of the redacted records, the Court concurs.

### III.   CONCLUSION

Defendants have shown that: (1) FBI, DEA, BATFE and Secret service have conducted reasonable searches for records responsive to plaintiff's FOIA request; (2) BATFE properly has withheld information under Exemption 3; (3) DEA and Secret Service properly have withheld information under Exemption 7(C); (4) DEA properly has withheld information under Exemptions 7(D) and 7(E); and (5) DEA and the Secret Service have released all reasonably segregable information to plaintiff. However, EOUSA has not demonstrated that its search was reasonable or that its decisions to withhold information under Exemptions 3, 5 and 7(C) were appropriate. Nor have defendants explained the disposition of the 15 pages of records referred by the EOUSA to the Secret Service or the 10 pages of records referred to the FBI by the DEA.

Accordingly, defendants' motion for summary judgment will be granted in part and denied in part without prejudice.  Defendants may file a renewed motion for summary judgment based on additional undisputed facts or by providing additional legal arguments.  An Order accompanies this Memorandum Opinion.


DATE:  January 30, 2013

                              ROBERT L. WILKINS
                              United States District Judge